Anastasi Pardalis
Pardalis & Nohavicka, LLP
950 Third Avenue, 11th Floor
New York, NY 10022
Telephone: 212-213-8511
Facsimile: 718-777-0599
*Attorneys for the Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------
GIANNIS ANTETOKOUNMPO,      )
                            )   Civ. Case No.
                *Plaintiff,*    )
                            )
        -v-                 )
                            )   **COMPLAINT**
SARAH ZELLNER; SHALICIA E. HURNS;   )   **JURY TRIAL DEMANDED**
BRITTNEY SNIDER; MARIO ZUCCA;   )
ERIC PREUSS; DEMAREAS J. JACKSON;   )
CAN ARDA; RICHARD A. RAY;   )
PLAYBOOK INC.               )
                            )
                *Defendants.*

Plaintiff, GIANNIS ANTETOKOUNMPO ( "Antetokounmpo" or "Plaintiff"), an

individual, by and through his undersigned attorneys, PARDALIS & NOHAVICKA, LLP,

hereby alleges as follows against Defendants SARAH ZELLNER; SHALICIA E. HURNS;

BRITTNEY SNIDER; MARIO ZUCCA; ERIC PREUSS; DEMAREAS J. JACKSON; CAN

ARDA; RICHARD A. RAY; PLAYBOOK INC. (hereinafter referred to as "Zellner", "Hurns",

"Snider", "Zucca", "Preuss", "Jackson", "Arda", "Ray", "Playbook", or collectively,

"Defendants").

**NATURE OF ACTION**

1.    Plaintiff brings this action for false designation of origin, false endorsement,

misappropriation of intellectual property rights and violation of his right of publicity by

Defendants through the unauthorized use of his name and or likeness without limitation, by advertising, marketing, promoting, distributing, displaying, offering for sale and selling unlicensed products bearing Plaintiff's name and or likeness. Defendants' illegal actions are likely to cause confusion as to the affiliation, connection, association, origin, sponsorship or approval of goods with those authorized by Plaintiff, and dilute the famous GIANNIS ANTETOKOUNMPO name and brand.

2.      This action involves claims for:

1) False designation of origin and false endorsement in violation of 15 U.S.C. § 1125;

2) Deceptive Acts and Practices (N.Y. Gen Bus L. § 349);

3) Common Law Unfair Competition;

4)  Unjust Enrichment;

5) Tortious Interference with prospective economic advantage;

6) Conspiracy and Concert of Action; and

7) Violation of right of publicity (NY Civ Rights Law § 50-51).

3.      Plaintiff is a widely known, extremely successful and popular basketball player. He won the NBA Most Valuable Player Award (MVP) two years in a row, for years 2019 and 2020. He also won the NBA Defensive Player of the Year Award for 2020. He has millions of fans, and he is currently one of the most well-known basketball players in the world.

4.      Aside from his basketball career, Plaintiff has been using his name and brand in commerce in the United States and worldwide; products bearing his name, likeness and trademarks ("Antetokounmpo Rights") are distributed at stores and markets throughout the United States.

5.      The Antetokounmpo Rights have been the subject of licenses granted by Antetokounmpo to third parties to use and exploit such rights on or in connection with various goods and services, including clothing, and various other items and merchandise. Plaintiff has expended substantial time, money, and resources to successfully develop, promote, and advertise the Antetokounmpo Rights throughout the world, such that they are now a source-identifying brand.

6.      As a result of his efforts, his impressive professional abilities, and widespread popularity, the Antetokounmpo Rights have become an invaluable asset.

7.      Nevertheless, upon information and belief, Defendants have been selling counterfeit apparel, socks, stickers, prints, wall art, buttons, digital downloads, coasters, mugs, phone cases, drawstring bags, memorabilia including custom printed game tickets, and other related items bearing Antetokounmpo's name and or likeness in a manner causing significant consumer confusion as to the affiliation, sponsorship and/or endorsement of such products by Plaintiff. Such actions further undermine Plaintiff's brand and diminish the need for licensed products.

8.      Upon learning of Defendants' unauthorized use of his name and likeness, Plaintiff took immediate action and asked Defendants to provide him with a full accounting of all merchandise sold by Defendants in violation of the Antetokounmpo Rights (the "Counterfeit Products").

9.      Moreover, Plaintiff demanded that Defendants cease selling Counterfeit Products violating the Antetokounmpo Rights.

10.     Defendants, after receiving Plaintiff's cease and desist letter, failed to cooperate with Plaintiff by surrendering the counterfeit inventory and other reasonable requests which were

meant to ensure that the counterfeiting had ceased, and that Plaintiff would be adequately compensated for the damages he incurred.

11.     As a result of Defendants' wrongful conduct, Plaintiff brings this action for monetary and injunctive relief.

## JURISDICTION AND VENUE
### Federal Question Jurisdiction and Supplemental Jurisdiction

12.     This action arises under the Lanham Act and the statutory and common laws of the State of New York. This Court has subject matter jurisdiction over this action over Plaintiff's federal claims under 15 U.S.C. § 1125 and 28 U.S.C. §1331 and 1338(a).

13.     This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §§ 1367(a), because they are so related to the claims within the original jurisdiction of the Court that they form part of the same case or controversy under Article III of the United States Constitution.

14.     Personal jurisdiction exists over Defendants in this judicial district pursuant to N.Y.C.P.L.R. § 302(a)(1) and N.Y.C.P.L.R. § 302(a)(3), or in the alternative, Federal Rule of Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact and/or solicits business in New York and in this judicial district, and/or derives substantial revenue from the business transactions in New York and in this judicial district and/or otherwise avails itself of the privileges and protections of the laws of the State of New York such that this Court's assertion of jurisdiction over Defendants do not offend traditional notions of fair play and due process, and/or Defendants' counterfeiting actions caused injury to Plaintiff in New York and in this judicial district such that Defendants should reasonably expect such actions to have consequences in New York and in this judicial district, for example:

a)   Upon information and belief, Defendants have been systematically directing and/or targeting business activities at consumers all over the country, including New York, through https://www.redbubble.com, https://www.etsy.com, https://www.playbookproducts.com, and potentially other websites where consumers can place orders.

b)   Defendants used https://www.redbubble.com, https://www.etsy.com, and/or https://www.playbookproducts.com to sell the Counterfeit Products, websites which provides information about and describes the goods sold; they further allows online sales with the use of a credit card and other means of payment, and provides for shipping of purchased items.

c)   Upon information and belief, Defendants are aware of the products that Plaintiff offers, specifically products bearing his name and likeness. Defendants are aware that counterfeiting actions, alleged herein, are likely to cause injury to Plaintiff in New York and in this judicial district specifically, as Plaintiff conducts substantial business in New York.

15.   Venue is proper in this District under 28 U.S.C. §§ 1391(b) and (c), because acts giving rise to this complaint occurred within this judicial district.

**THE PARTIES**

16.   Plaintiff, Giannis Antetokounmpo, is an individual residing in Chicago, Illinois. Plaintiff is an internationally famous athlete and professional basketball player, born in Greece and currently residing in the U.S.

17.   In 2007, Plaintiff started playing basketball, and by 2009, he was playing competitively for the youth squad of Filathlitikos. From 2013 to the present, he has been playing

for the Milwaukee Bucks in the National Basketball Association ("NBA"). Plaintiff recently won the MVP at the 2019 NBA Awards, the NBA Defensive Player of the Year for 2019-2020, and the MVP at the 2020 NBA Awards.

18.     Plaintiff is widely known under his nickname the "GREEK FREAK". His popularity has been rising over the last few years and he has participated or licensed his name, nickname and/or likeness to various brands and campaigns.

19.     Upon information and belief, Defendant Sarah Zellner is an individual with an address at 2318 S 29th Street, Milwaukee, WI 53215.

20.     Upon information and belief, Defendant Shalicia E. Hurns is an individual with an address at 8803 E 16th Place, Indianapolis, IN 46219.

21.     Upon information and belief, Defendant Brittney Snider is an individual with an address at 8803 E 16th Place, Indianapolis, IN 46219.

22.     Upon information and belief, Defendant Mario Zucca is an individual with an address at 511 Burnham Road, Philadelphia, PA 19119.

23.     Upon information and belief, Defendant Eric Preuss is an individual with an address at 1612 N 49th Street, Milwaukee, WI 53208.

24.     Upon information and belief, Defendant Demareas J. Jackson is an individual with an address at 801 Spring Loop Apt. 702, College Station, TX 77840.

25.     Upon information and belief, Defendant Can Arda is an individual with an address at 11115 Mills Road STE 117, Cypress, TX 77429.

26.     Upon information and belief, Defendant Richard A. Ray is an individual with an address at 1 Rumbaugh Ave, Mt. Pleasant, PA 15666.

27.     Upon information and belief, Defendant Playbook Inc. is a corporation registered

in the State of California, with its principal place of business located at 42 Adrian Court, Burlingame, CA 94010. Defendant Playbook's agent for service of process is its Founder/CEO, Austin Rachlin Lockwood, with an address of 1201 Mills Ave, Burlingame, CA 94010.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL CLAIMS

### Antetokounmpo's Fame and Established Brand

28.     Plaintiff has built a strong reputation for his professional skills which is further reflected in the quality of the products he offers.

29.     Plaintiff has continually used his name and likeness in connection with his products in U.S. commerce for several years. He is widely known for his impressive professional abilities and achievements.

30.      During this time, Plaintiff has engaged in substantial advertising and promotion, and has expended substantial time, money, and resources to successfully develop and promote the Antetokounmpo Rights.

31.     Plaintiff has also entered into licensing and other similar agreements with third parties for the authorized use of the Antetokounmpo Rights in commerce in connection with a variety of goods.

32.     Antetokounmpo's products are directly associated with Antetokounmpo as his products distinguish themselves among competitive products based on their association with Antetokounmpo and their superior design and quality.

### Defendants' Infringing Activities

33.     Notwithstanding Plaintiff's established rights, upon information and belief, Defendants have advertised and sold various products bearing Plaintiff's name and likeness through various media, platforms, and websites including https://www.etsy.com,

https://www.redbubble.com,   https://playbookproducts.com,   and   potentially   through   other outlets (EXHIBIT A), targeting consumers in both the United States and elsewhere.

34.     Defendants have engaged in this infringing activity despite having constructive notice of the Antetokounmpo Rights and having actual knowledge of Plaintiff's use of his name, and likeness since Defendants offer directly competitive products in the same marketplace.

35.     Plaintiff never authorized Defendants to design, advertise, sell and/or distribute products bearing the Antetokounmpo Rights.

36.     On January 5, 2022, Plaintiff, through his attorneys, sent a Cease-and Desist letter to Defendant Zellner (EXHIBIT B), alerting her of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

37.     On January 5, 2022, Plaintiff, through his attorneys, sent a Cease-and-Desist letter to Defendant Hurns (EXHIBIT B), alerting her of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

38.     On January 5, 2022, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Snider (EXHIBIT B) alerting her of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

39.     On January 5, 2022, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Zucca (EXHIBIT B), alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

40.     On December 6, 2021, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Preuss (EXHIBIT B) alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

41.     On October 26, 2021, Plaintiff through his attorneys sent a Cease-and-Desist

letter to Defendant Jackson (EXHIBIT B) alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

42.     On October 3, 2021, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Arda (EXHIBIT B) alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products.

43.     On September 2, 2021, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Ray, (EXHIBIT B) alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products. Defendant responded and confirmed he did have sales of the Counterfeit Products but failed to provide evidence that his Counterfeit activities have ceased.

44.     On October 6, 2021, Plaintiff through his attorneys sent a Cease-and-Desist letter to Defendant Playbook (EXHIBIT B) alerting him of Plaintiff's exclusive rights and requesting an accounting of all profits generated through the sales of the Counterfeit Products. Defendant responded, however, dismissed Plaintiff's rights and willingly chose to continue the sales of the Counterfeit Products.

45.     Defendants failed to cooperate with Plaintiff in good faith to reach an agreement that would ensure that infringement ceased, and Plaintiff is reasonably compensated for the damage he incurred.

46.     Upon information and belief, the products offered by Defendants bearing the Antetokounmpo Rights were of a particular aesthetic not aligned with Plaintiff and of a substantially lower quality than the products offered by Plaintiff.  As such, it is likely that these products will cause injury to Plaintiff's reputation as the provider of high-end products on the marketplace.

47.     Defendants' use of the Antetokounmpo Rights is directly competitive with Plaintiff's use of the Antetokounmpo Rights on his products and has caused confusion, mistake, and deception as to the source of Defendants' goods and services.

48.     Specifically, Defendants placed Plaintiff's name and or likeness on various items, including counterfeit apparel, socks, stickers, prints, wall art, buttons, digital downloads, coasters, mugs, phone cases, drawstring bags, memorabilia including custom printed game tickets, and other relevant items. Neither the items themselves nor the associated product descriptions include any additional source-identifiers such as trademarks, trade names or brand indicia.

49.     Defendants' failure to cooperate with Plaintiff demonstrates Defendants' bad faith intent to profit from Plaintiff's success, by misleading, confusing and deceiving consumers.

50.     There is no question that the products sold by Defendants bearing Plaintiff's name and or likeness were sold by Defendants with the purpose of confusing and misleading consumers into believing that they are purchasing products associated with or endorsed by Giannis Antetokounmpo, one of the most successful and popular NBA players, and to avoid expending any licensing fees in order to garner significant profit from Plaintiff's name and or likeness. Defendants therefore traded off the goodwill and reputation of Plaintiff by engaging in the unauthorized use of the Antetokounmpo Rights.

**FIRST CAUSE OF ACTION**
**False designation of origin and false descriptions in violation of 15 U.S.C. § 1125**

51.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

52.     As a result of Plaintiff's continuous use of his name in commerce, his name has become inherently distinctive, and it is widely recognized among consumers as a source-

identifier of Plaintiff's products.

53.     Defendants' unauthorized use of Antetokounmpo's name and likeness in connection with counterfeit apparel, socks, stickers, prints, wall art, buttons, digital downloads, coasters, mugs, phone cases, drawstring bags, memorabilia including custom printed game tickets, and other related items falsely designates such products as being somehow legitimately associated, connected, endorsed or approved by Plaintiff, and causes confusion, mistake, and deception as to the source, sponsorship, or approval of Defendants' products by Plaintiff. Such actions, thus, constitute false designation of origin, false endorsement and misleading description and representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

54.     By designing, advertising, marketing, promoting, distributing, offering for sale or otherwise dealing with the Counterfeit Products, Defendants have traded off the goodwill of Plaintiff and his products, thereby directly and unfairly competing with Plaintiff.

55.     Upon information and belief, Defendants' aforementioned wrongful actions have been knowing, deliberate, willful, intended to cause confusion, to cause mistake and to deceive consumers and were performed with the intent to trade on the goodwill and reputation of Plaintiff.

56.     By reason of Defendants' aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to his business, reputation, and goodwill, and will sustain loss of revenue and profits.

57.     Unless enjoined by this Court, Defendants will continue to perform the acts complained of herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff. Plaintiff has no adequate remedy at law for Defendants' wrongful acts.

**SECOND CAUSE OF ACTION**
**Deceptive Acts and Unfair Trade Practices (N.Y. Gen Bus L. § 349)**

58.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

59.     Defendants' activities consist of deceptive acts and practices in the conduct of the business.

60.     Defendants' aforementioned deceptive acts are aimed at consumers, and are materially misleading with respect to the source, sponsorship, and affiliation or approval of Defendants' activities, and/or falsely suggest that Defendants are somehow legitimately affiliated, connected, or associated with Plaintiff.

61.     Plaintiff has been, and will continue to be, damaged by Defendants' deceptive acts and practices in an amount to be determined at trial.

62.     Defendants have caused, and will continue to cause, irreparable injury to Plaintiff and to the public unless restrained by this Court, pursuant to N.Y. Gen. Bus. L. § 349.

### THIRD CAUSE OF ACTION
### Common Law Unfair Competition and Misappropriation

63.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

64.     Defendants' aforesaid activities constitute deliberate passing off, unfair competition, misappropriation, unjust enrichment, unfair and fraudulent business practices, and misuse of Plaintiff's name mark and brand under the common law of the State of New York.

65.     Upon information and belief, Defendants' conduct is willful, deliberate, intentional, and in bad faith.

66.     By reason of Defendants' aforesaid acts, Plaintiff has suffered and will continue to suffer damage and injury to his business, reputation, and good will, and will sustain loss of

revenue and profits.

67.     Unless and until enjoined by this Court, Defendants will continue to perform the acts complained herein and cause said damages and injury, all to the immediate and irreparable harm of Plaintiff. Plaintiff has no adequate remedy at law for Defendants' wrongful acts.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment

68.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

69.     By virtue of the egregious and illegal acts of Defendants as described herein, Defendants have been unjustly enriched in an amount to be proven at trial.

70.     Defendants' retention of monies gained through the deceptive business practices, acts of deceit, and otherwise would serve to unjustly enrich Defendants and would be contrary to the interests of justice.

## FIFTH CAUSE OF ACTION
### Tortious Interference with Prospective Economic Advantage

71.     Plaintiff incorporates by reference each and every allegation in the foregoing paragraphs of this Complaint.

72.     Plaintiff has enjoyed long and successful business relationships with his authorized distributors and customers.

73.     Defendants' conduct has interfered with these relationships and constitutes tortious interference with prospective business relationships with these distributors and customers.

74.     Defendants employed wrongful means in an effort to harm Plaintiff, Plaintiff's reputation, Plaintiff's relationship with his customers and his distribution network, for which

Defendants and any other identified person or entity who has acted in concert or in participation

with him, are liable to Plaintiff for actual and punitive damages in an amount to be proven at

trial.

## SIXTH CAUSE OF ACTION
### Conspiracy and Concert of Action

75.     Plaintiff incorporates by reference each and every allegation in the foregoing

paragraphs of this Complaint.

76.     Upon information and belief, Defendants have conspired with unknown

manufacturers and/or suppliers in the U.S. and/or overseas and other persons to illegally

manufacture and/or import in the United States, products bearing Antetokounmpo's name and

or likeness.

77.     Defendants' conduct combined with the conduct of unknown third parties

constitutes conspiracy and concert of action to tortiously interfere with Plaintiff's business, for

which each conspirator is liable to Plaintiff for damages.

## SEVENTH CAUSE OF ACTION
### Violation of Right of Publicity

78.     Plaintiff incorporates by reference each and every allegation in the foregoing

paragraphs of this Complaint.

79.     Defendants knowingly used Plaintiff's name and/or likeness, which form part of

Plaintiff's identity; such use resulted in Defendants' commercial advantage; such use was made

without Plaintiff's consent; and Plaintiff has been injured financially because of such use.

80.     Defendants used Plaintiff's name, through websites accessible by and which

targets consumers throughout the United States, including New York.

81.     Defendants have therefore committed an actionable wrong under NY Civ Rights

Law § 50 and is liable to Plaintiff for such remedies as are afforded it under NY Civ Rights Law § 51.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court enter judgment in its favor and against Defendants on all its claims and award the following to Plaintiff:

1.      Preliminary and permanent injunctive relief enjoining Defendants and Defendants' agents, attorneys, employees, and all others in active concern or participation with them from:

(a) any further acts of violation or misappropriation of the Antetokounmpo Rights.

(b) using Plaintiff's name and likeness unless expressly and specifically authorized by Plaintiff;

(c) doing any act or thing that is likely to dilute the distinctiveness of Plaintiff's brand or that is likely to tarnish the goodwill associated with it.

2.      An order, pursuant to 15 U.S.C. § 1116 (a), directing Defendants to file with the Court and serve on counsel for Plaintiff within thirty (30) days after the entry of injunction issued by this Court, a sworn statement setting forth in detail the manner and form in which Defendants have complied with the injunction;

3.      The following damages:

(a) All monetary actual and/or statutory damages sustained and to be sustained by Plaintiff as a consequence of Defendants' unlawful conduct, said amount to be trebled pursuant to 15 U.S.C. §1117 N.Y. Gen. Bus. L. §349, N.Y. Gen. Bus. L. §360-m, and/or any other applicable statute;

1

(b) All exemplary and/or punitive damages to which Plaintiff is entitled under

2

statutory or common law;

3

(c) Pre-judgement interest according to law;

4

(d) Plaintiff's reasonable attorney's fees, pursuant to 15 U.S.C. § 1117, N.Y. Gen.

5

Bus. L. § 349, N.Y. Gen. Bus. L. § 360-m, and/or any other applicable statute, together

6

with the costs and disbursements of this action; and

7

8

4.      Such other and further relief as the Court deems just and proper.

9

## DEMAND FOR JURY TRIAL

10

Plaintiff, Giannis Antetokounmpo, an individual, hereby demands a jury trial.

11

12

Dated: New York, New York
         March 4, 2022

13

14

Respectfully submitted,

15

**PARDALIS & NOHAVICKA, LLP**

16

By:      _/s/ Anastasi Pardalis_____

17

Anastasi Pardalis
*Attorneys for Plaintiff*

18

950 Third Avenue, 11th Floor
New York, NY 10022

19

Tel.: 212-213-8511

20

Fax: 718-777-0599
taso@pnlawyers.com

21

22

23

24

25

26

27

28